CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED
12/9/2025
LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | |
|---|---|
| CARRIE MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>SALES EDGE OF VIRGINIA, INC., SETS, LLC, and O'REILLY AUTO ENTERPRISES, LLC,<br><br>Defendants. | Case No.: 1:25cv76<br><br>CLASS AND COLLECTIVE ACTION<br><br>**JURY TRIAL DEMANDED** |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Carrie Miller ("Plaintiff"), through her undersigned counsel, individually and on behalf of all persons similarly situated, files this Class and Collective Action Complaint against Defendants Sales Edge of Virginia, Inc. and SETS, LLC, (together, the "Sales Edge Defendants")[1] and O'Reilly Auto Enterprises, LLC ("O'Reilly") (collectively, "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"), the Virginia Misclassification Law, Va. Code § 40.1-28.7:7 ("VML"), and for unpaid wages in violation of the Virginia Wage Payment Act, Va. Code § 40.1-29 ("VWPA"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## INTRODUCTION

1. The Sales Edge Defendants operate a nationwide retail support company that provides Defendant O'Reilly with merchandising, fixture and display installations, store remodel,

[1] Plaintiff alleges that Sales Edge of Virginia, Inc. and SETS, LLC are together a single entity and will accordingly refer to them collectively as the "Sales Edge Defendants".

and retail construction services.

2. Defendants jointly employed Plaintiff and other similarly situated non-exempt workers, to travel to O'Reilly Auto Parts retailers and set up store displays and shelving for large scale retail installations ("Crew Members").

3. This case is about Defendants' willful misclassification of non-exempt hourly employees as independent contractors and their failure to pay their non-exempt employees all the wages to which they are entitled, including regular and overtime wages. As described in further detail below, Defendants intentionally misclassified employees to avoid properly paying their employees overtime at a rate of time and one half (1 ½) times their regular rate for all hours worked in excess of forty (40) hours in a workweek as required under the FLSA.

4. This case is also about Defendants' willful and knowing misclassification of Plaintiff and Crew Members as independent contractors and their failure to pay all wages due in violation of the VML and VWPA.

5. Wage theft and worker misclassification are pervasive issues in the Commonwealth of Virginia, so much so that the General Assembly recently adopted or amended statutes, such as VOWA, VWPA and VML, designed to compensate its victims and incentivize employers' compliance with the law. Worker misclassification is a form of wage theft and payroll abuse where workers that should be classified as employees are illegally classified as independent contractors. By misclassifying workers, employers are denying their employees from receiving lawful wages and benefits while simultaneously underfunding social insurance programs like Social Security, Medicaid, unemployment insurance, and workers' compensation.

6. Defendants' policies and/or practices comprising the alleged violations are ongoing.

## JURISDICTION AND VENUE

7. The exercise of jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the FLSA claims they form part of the same case or controversy.

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. The Sales Edge Defendants are incorporated within this district, maintain their principal place of business in this District, and all Defendants conduct a substantial portion of their business activities in this District.

## PARTIES

10. Plaintiff is an adult resident of State Road, North Carolina. Plaintiff worked for Defendants as a Crew Member from approximately 2023 until August 11, 2025. Plaintiff's written consent to be a plaintiff in this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

11. Defendant Sales Edge of Virginia, Inc. is a Virginia for-profit corporation with its principal office at 100 West Main Street, Suite B, Wytheville, VA 24382.

12. Defendant SETS, LLC is a Virginia limited liability company with its principal office at 100 West Main Street, Suite B, Wytheville, VA 24382.

13. Defendant O'Reilly Auto Enterprises, LLC is a limited liability company which is organized and existing under the laws of the State of Delaware, with its principal place of business located in Springfield, Missouri.

14. Defendants and/or Defendants' officers, directors, agents, employees, or representatives committed the unlawful acts alleged in this Complaint while actively engaged in

the management of Defendants' businesses or affairs and with the authorization of Defendants.

15. At all times relevant to this Complaint, Plaintiff and similarly situated workers were and are "employees" of Defendants and covered by the FLSA.

16. At all times relevant, Defendants were and are "employers" covered by the FLSA.

17. Defendants employed Plaintiff and continue to employ similarly situated workers in Virginia and across the United States.

18. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

19. At all times pertinent to this Complaint, Defendants were an enterprise engaged in interstate commerce; had gross operating revenues in excess of $500,000.00; and employed two or more persons in interstate commerce.

## COLLECTIVE DEFINITIONS

20. Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of herself and the following similarly situated persons:

> All current and former non-exempt Crew Members who were paid by Sales Edge of Virginia, Inc. and/or SETS, LLC to perform work on behalf of O'Reilly Auto Enterprises, LLC in the United States, and who worked more than forty (40) hours in at least one workweek during the past three years (the "Collective" or "Collective Members").

21. Plaintiff brings Counts II-III of this lawsuit pursuant to Va. Code § 40.1-28.7:7, Va. Code § 40.1-29, and Fed. R. Civ. P. 23 as a class action on behalf of herself and the following class:

> All current and former non-exempt Crew Members who were paid by Sales Edge of Virginia, Inc. and/or SETS, LLC to perform work on behalf of O'Reilly Auto Enterprises, LLC in the Commonwealth of Virginia, and were classified as independent contractors during the past three years (the "Virginia Class" or

"Virginia Class Members").

22. The Collective and the Virginia Class are together referred to as the "Classes," with individual members referred to as "Class Members."

23. Plaintiff reserves the right to redefine the Classes prior to notice, and thereafter, as necessary.

## FACTS

### A. The Sales Edge Defendants Operate as a Single Integrated Enterprise

24. The Sales Edge Defendants operate as one entity.

25. Sales Edge of Virginia, Inc. and SETS, LLC both operate out of the same corporate offices at 100 West Main Street, Suite B, Wytheville, VA 24382.

26. The Sales Edge Defendants have overlapping officers and directors.

27. The Sales Edge Defendants are both owned and operated by Richard Formato, Jr.

28. Sales Edge of Virginia, Inc. and SETS, LLC hold themselves out to be one company to their employees and customers.

29. The Sales Edge Defendants are joint employers of the Crew Members as the Sales Edge Defendants' operations are interrelated and share common management, supervisors, and employees.

30. Because the Sales Edge Defendants' operations are interrelated to such an extent, employees, like Plaintiff, believe they are the same company.

31. Plaintiff received an employee handbook from Sales Edge of Virginia, Inc. and her pay statements list SETS, LLC as the "employer".

32. The Sales Edge Defendants maintain common policies and practices applicable to all Crew Members including but not limited to compensation, payroll, timekeeping, performance expectations, and training.

33. The Sales Edge Defendants jointly possessed the power to hire and fire Plaintiff and other similarly situated Crew Members.

34. The Sales Edge Defendants jointly maintained employment records for Plaintiff and other similarly situated Crew Members.

35. The Sales Edge Defendants jointly directed along with Defendant O'Reilly the day-to-day work of Plaintiff and other Crew Members.

**B. Defendant O'Reilly is a Joint Employer of Class Members**

36. Defendant O'Reilly is a publicly traded automotive replacement parts retailer in the United States, serving both professional mechanics and do-it-yourself consumers with a vast selection of parts, tools, and accessories.

37. Defendant O'Reilly has more than 6,400 stores across 48 U.S. states, Puerto Rico, Mexico and Canada.

38. Defendant O'Reilly utilizes the Sales Edge Defendants to provide a workforce of Class Members to complete new store installs and remodels of shelving and displays across the country.

39. Class Members complete work for Defendant O'Reilly and must carry out the tasks assigned by Defendant O'Reilly under O'Reilly's supervision and to O'Reilly's specifications.

40. Defendant O'Reilly provides an on-site shop supervisor to direct and control the work Class Members are employed to perform.

41. Defendant O'Reilly's supervisor controls the execution of projects, the floor plans, truck schedules, and direction of Class Members' work during shifts.

42. Defendant O'Reilly controls and dictates the Class Members' work schedules. Defendant O'Reilly's supervisor dictates Class Members' start time, and end time, and makes

decisions about whether Class Members will need to start work early on certain days or stay late to complete projects.

43. While working in O'Reilly stores, Class Members were subject to certain policies set by Defendant O'Reilly, and Defendant O'Reilly had the ability to dismiss Class Members from work for violations of O'Reilly's policies.

44. Defendant O'Reilly exercises control over Class Members' compensation through its contract with the Sales Edge Defendants.

45. Defendant O'Reilly exercises control over the manner and timing of Class Members' pay. For example, prior to June 2025, Plaintiff would receive reimbursement for mileage at the end of the week in which she incurred mileage costs; however, in or around June 2025, Plaintiff and other Class Members were informed that Defendant O'Reilly initiated a change such that Plaintiff's and Class Members' mileage reimbursements would thereafter be paid the week after which the mileage costs were incurred.

**C. The Nature of Plaintiff's and other Crew Members' Work**

46. Defendants employ individuals, such as Plaintiff and the Class Members, to construct and install retail merchandise displays, set planograms, move product throughout the stores, unload trucks, and build counters, shelving, and displays remodel in O'Reilly stores.

47. Defendants sent Plaintiff and the Class Members to various O'Reilly locations across the United States to complete these projects.

48. Defendants set Plaintiff's and other Class Members' work schedules.

49. Defendants tell Plaintiff and other Class Members which locations to travel to and how long their assignment will last.

50. Defendants have sent Plaintiff to complete projects in thirty-four (34) states including but not limited to Arkansas, Connecticut, Indiana, Illinois, Kentucky, Maine, Maryland,

Massachusetts, Michigan, Montana, North Carolina, New York, Ohio, Pennsylvania, South Carolina, Tennessee, Vermont, Virginia, and Wisconsin.

51. Plaintiff worked on crews of ten (10) to twenty (20) other Crew Members and is aware that Defendants currently employ approximately four (4) crews all of a similar size.

52. Plaintiff and the Class Members were sent to work at remote job sites in other states for periods of time ranging from one (1) week to one (1) month, depending on Defendant O'Reilly's needs and the size of the job.

53. While working at these remote job sites, Defendants provided lodging to Plaintiff and the Class Members at hotels near the job sites.

54. Plaintiff and other Class Members were expected to transport themselves to the remote job sites and received mileage cost reimbursement at $0.23 per mile for each mile they drove to the required location.

55. Plaintiff and other Class Members were regularly scheduled to work between thirty-six (36) and forty (40) hours in O'Reilly's stores each week.

56. The typical schedule that Plaintiff and Class Members were assigned to work in stores was 7:30am-4:30pm Monday thru Thursday, and 7:30am-11:30am Friday, subject to changes or extensions as dictated by Defendants and the needs of the particular job.

57. Plaintiff and Class Members were expected to travel between job sites on evenings and weekends, so as not to interfere with their in-store obligations.

58. Plaintiff and other Class Members were regularly required to travel five (5) hours or more per week for work, and sometimes as much as fourteen (14) hours at a time.

59. Defendants did not record or pay Plaintiff and other Class Members for their required travel time.

60. By virtue of Defendants' failure to record or pay Plaintiff and other Class Members for their required travel time, Defendants failed to pay Plaintiff and the Class members for all hours worked.

**D. Defendants Failed to Pay Class Members Overtime Wages**

61. Plaintiff and the Class Members performed blue collar, manual work.

62. Plaintiff and Class Members were not employed in any bona fide executive, administrative, or professional capacity.

63. Based on the nature of Plaintiff's and the Class Members' job duties, there is no FLSA or state law exemption that applies to preclude them from being paid overtime at one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

64. Plaintiff and other Class Members regularly worked over forty (40) hours per week when counting both in-store work and the required travel time.

65. Plaintiff and other Class Members are non-exempt for overtime purposes.

66. Despite regularly working in excess of forty (40) hours per week, Defendants did not pay Plaintiff or Class Members overtime premium pay as required by the FLSA because Defendants misclassified Plaintiff and Class Members as independent contractors.

67. For example, during the week of May 18 – 24, 2025, Plaintiff's timesheet reflects she worked 39.5 hours in store at a location in Poughkeepsie, New York, which required at least six (6) hours of drive time each way. Despite working well over forty hours this week, Defendants did not pay Plaintiff any overtime compensation for her hours worked over forty (40) hours.

**D. Class Members were Misclassified as Independent Contractors**

68. The Sales Edge Defendants hired Plaintiff and other Crew Members as purported independent contractors despite treating Plaintiff and other Crew Members as employees.

69. When Plaintiff was hired, her supervisor gave her a Sales Edge employee handbook that contained various employment policies and procedures that she was expected to follow.

70. Plaintiff and other Class Members were not presented with and did not sign an agreement establishing an independent contractor relationship.

71. The first page of Plaintiff's employee handbook states "[a]ll our employees are employed on an 'at will' basis."

72. The Sales Edge Defendants paid Plaintiff and other Class Members hourly wages and provided reimbursement for their mileage.

73. The Sales Edge Defendants paid Plaintiff and other Class Members on a weekly basis.

74. Plaintiff's weekly pay statements label her as an "employee," assign her an "employee ID," and label SETS LLC as her "employer."

75. Despite having an overtime rate listed on her pay statements, the Sales Edge Defendants did not pay Plaintiff overtime premium pay at one and one-half her regular rate of pay.

76. The Sales Edge Defendants did not provide Plaintiff or other Class Members any employee benefits such as medical, vision, dental, etc.

77. The Sales Edge Defendants required Plaintiff and other Class Members to wear a Sales Edge company shirt, as part of their uniform.

78. Defendants employed Plaintiff and other Class Members full time and had an on-going employment relationship that was not limited in duration or by project.

79. The Sales Edge Defendants controlled Plaintiff's and other Class Members' work schedules, telling them where to work and when.

80. Plaintiff and other Class Members were not allowed to turn down job assignments.

81. The Sales Edge Defendants trained Plaintiff and other Class Members how to do the job Defendants wished them to perform.

82. Plaintiff and Class Members were not hired to perform specialized work, rather their work was primarily manual labor.

83. Plaintiff and Class Members were not in business for themselves and were not working in an independently established trade.

84. Plaintiff and other Class Members did not have the opportunity for profit or loss depending on their skill, as Plaintiff and other Class Members were paid hourly wages based upon the hours they worked for Defendants.

85. Defendants generally provided all the supplies and tools that Plaintiff and other Class Members needed in order to complete the work assigned to them.

86. Plaintiff and other Class Members did not negotiate pay based on the specific jobs Defendants assigned them.

87. Plaintiff and other Class Members did not choose which customers or jobs to work, rather Defendants assigned Plaintiff and other Class Members their job tasks at each O'Reilly's store they were assigned.

88. The work performed by Plaintiff and other Class Members was an integral part of the Sales Edge Defendants' business, in that the Sales Edge Defendants' entire business was comprised of providing the labor of Plaintiff and other Class Members to complete store install and merchandising services at O'Reilly Auto Parts stores.

89. Defendants control and direct the day-to-day work of Plaintiff and other Class Members, including by instructing them when, where, and how to do their work.

90. Plaintiff's annual wages were reported on a 1099 tax form.

91. The Sales Edge Defendants' project manager who supervised Plaintiff told her that she and other Class Members were classified as 1099 independent contractors so that the company could avoid paying insurance for employees.

92. Upon information and belief, Defendants intentionally and willfully misclassified Class Members as independent contractors in order to avoid paying employee benefits, unemployment taxes, and to avoid its overtime pay obligations under the FLSA.

**E. Defendants Violations Were Willful**

93. Defendants' actions in violation of the FLSA and Virginia law were or are made willfully in an effort to avoid liability under the FLSA and Virginia law.

94. Defendants intentionally misclassified Plaintiff and other Class Members in an effort to avoid liability under the FLSA.

95. Even though the FLSA requires overtime premium compensation for hours worked over forty hours per week, Defendants have not properly paid Plaintiff and other Class Members overtime compensation for all overtime hours worked.

96. Defendants knew, or absent their own recklessness should have known, that Plaintiff and Class Members are or were entitled to such overtime premiums.

97. Defendants knew or absent their own recklessness should have known that Plaintiff and other Class Members were entitled to overtime premiums under the FLSA.

98. By failing to pay all compensation owed to Plaintiff and other Class Members, Defendants have acted willfully or with reckless disregard of clearly applicable FLSA provisions.

99. Defendants have not made good-faith efforts to comply with the FLSA.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

100. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of herself and the Collective Members as defined above.

101. Plaintiff desires to pursue her FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

102. Plaintiff and the Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or have worked pursuant to Defendants' previously described common business and compensation practices, and, as a result of such practices, have not been properly paid overtime compensation for all hours worked over forty (40) in a workweek during the relevant time period. Resolution of this action requires inquiry into common facts, including, Defendants' common timekeeping, classification, compensation, and payroll practices applicable to the employees at issue.

103. The Collective Members are known to Defendants, are readily identifiable through HR and payroll records, and can easily be located through Defendants' business and human resources records and electronic systems.

104. Defendants employ dozens of Collective Members. These similarly situated employees, consisting of both current and former employees who have been employed by Defendants during the relevant three-year statute of limitations period, should promptly be notified in writing of this action through U.S. mail, email, and text message and/or other means, and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

105. Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Virginia Class defined above.

106. The members of the Virginia Class are so numerous that joinder of all members is

impracticable. Upon information and belief, there are more than forty (40) members of the Virginia Class.

107. Plaintiff will fairly and adequately represent and protect the interests of the Virginia Class because there is no conflict between the claims of Plaintiff and those of the Virginia Class, and Plaintiff's claims are typical of the claims of the Virginia Class. Plaintiff's Counsel are competent and experienced in class action litigation and other complex litigation, including wage and hour cases like this one.

108. There are questions of law and fact common to the proposed Virginia Class, which predominate over any questions affecting only individual class members, including without limitation: whether Defendants have violated and continue to violate the laws of Virginia through their willful misclassification of Virginia Class Members and their failure to pay for all hours, including overtime hours, that Plaintiff and Virginia Class Members work.

109. Plaintiff's claims are typical of the claims of the Virginia Class in the following ways, without limitation: (a) Plaintiff is a member of the Virginia Class; (b) Plaintiff's claims arise out of the same policies, practices, and course of conduct of Defendants that form the basis of the claims of the Virginia Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Virginia Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Virginia Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by Virginia Class Members.

110. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Virginia Class predominate over any questions affecting only individual Virginia Class Members.

111. Class action treatment is superior to the alternatives for the fair and efficient

adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Virginia Class are readily identifiable from Defendants' own employment records. Prosecution of separate actions by individual members of the Virginia Class would create the risk of inconsistent or varying adjudications with respect to individual Virginia Class Members that would establish incompatible standards of conduct for Defendants.

112. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Virginia Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

113. Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Virginia Class. Plaintiff envisions no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiff and the Collective)**

114. All previous paragraphs are incorporated as though fully set forth herein.

115. The FLSA requires that covered non-exempt employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed. *See* 29 U.S.C. § 207.

116. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).

117. Defendants are subject to the wage requirements of the FLSA because Defendants are "employers" under 29 U.S.C. § 203(d).

118. At all relevant times, Defendants have been "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

119. During all relevant times, Plaintiff and Collective Members have been covered employees entitled to the FLSA's protections. *See* 29 U.S.C. § 203(e).

120. Plaintiff and Collective Members are not exempt from the overtime requirements of the FLSA.

121. Defendants, pursuant to their policies and practices, have failed and refused to pay proper overtime wages for all hours worked in excess of forty (40) in a workweek by Plaintiff and the Collective Members during the relevant time period.

122. Defendants have knowingly failed to properly compensate Plaintiff and the Collective Members overtime wages for hours worked in excess of forty (40) in a workweek, in violation of 29 U.S.C. § 207.

123. In violating the FLSA, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

124. Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee's wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages.

**COUNT II**
**Violation of the Virginia Misclassification Law Va. Code Ann. § 40.1-28.7:7**
**(On Behalf of Plaintiff and the Virginia Class)**

125. All previous paragraphs are incorporated as though fully set forth herein.

126. Plaintiff brings this Virginia Misclassification Law ("VML") count as a class action under Fed. R. Civ. P. 23, on behalf of herself and the Virginia Class.

127. The VML, Va. Code § 40.1-28.7:7, provides that "[a]n individual who has not been properly classified as an employee may bring a civil action for damages against [her] employer for failing to properly classify the employee if the employer had knowledge of the individual's misclassification."

128. At all times relevant, each Defendant has been, and continues to be, an "employer," and Plaintiff and each Virginia Class Member, has been, or continues to be, an "employee" within the meaning of the VML.

129. Under the VML "individual who performs services for a person for remuneration shall be presumed to be an employee of the person that paid such remuneration, and the person that paid such remuneration shall be presumed to be the employer of the individual who was paid for performing the services, unless it is shown that the individual is an independent contractor as determined under the Internal Revenue Service guidelines." Va. Code § 40.1-28.7:7(B).

130. Plaintiff and the Virginia Class Members performed services for Defendants for remuneration.

131. Therefore, Plaintiff and the Virginia Class Members are presumed to be employees of Defendants, who are presumed to be their employers, under the VML. Defendants will not be able to show Plaintiff and Virginia Class Members are independent contractors under the IRS guidelines.

132. The VML, further provides that "[i]f the court finds that the employer has not properly classified the individual as an employee, the court may award the individual damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action." VA Code § 40.1-28.7:7

133. Defendants improperly classified Plaintiff and the Virginia Class Members as independent contractors rather than employees, resulting in damages to Plaintiff and Virginia Class Members, and a denial to Plaintiff and Virginia Class Members of wages, salaries, and other employment benefits including insurance coverage and insurance benefits (including unemployment insurance benefits), employer-side payroll taxes, and other benefits which they would have been entitled to receive if they had been properly classified as employees.

134. Defendants had knowledge of their misclassification of Plaintiff and the Virginia Class Members.

135. Plaintiff for herself and the Virginia Class Members seek all relief allowed by law for Defendants' violation of the VML. VA Code § 40.1-28.7:7

**COUNT III**
**Violation of the Virginia Wage Payment Act ("VWPA")**
**Va. Code Ann. § 40.1-29**
**(On Behalf of Plaintiff and the Virginia Class)**

136. All previous paragraphs are incorporated as though fully set forth herein.

137. Plaintiff brings this VWPA count as a class action under Federal Rule of Civil Procedure 23, on behalf of herself and the Virginia Class.

138. At all times relevant to this action, Plaintiff and the Virginia Class Members were employed by Defendants within the meaning of the VPWA.

139. The VWPA provides, *inter alia*, that an employer must pay wages due on regular pay periods and "[u]pon termination of employment an employee shall be paid all wages or salaries due [her] for work performed prior thereto; such payment shall be made on or before the date on which [s]he would have been paid for such work had [her] employment not been terminated." Va. Code § 40.1-29(A).

140. The VWPA further provides, *inter alia*, that "No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee." Va. Code § 40.1-29(C).

141. Defendants violated the VWPA by failing to pay Plaintiff and the Virginia Class their wages for all hours worked, including hours spent driving and/or traveling to Defendants out-of-town work locations, which work Defendants required Plaintiff and the Virginia Class to perform.

142. Specifically, Plaintiff and the Virginia Class were not paid at all for any of the travel time they spent driving and traveling on Defendants' behalf for work.

143. By not paying Plaintiff and the Virginia Class Members on the required pay periods and, upon the termination of Plaintiff's and Virginia Class Members' employments, by not paying them on or before the dates on which Plaintiff and Virginia Class Members would have been paid for such work had their employment not been terminated, Defendants violated Va. Code § 40.1-29(A).

144. By failing to pay Plaintiff and the Virginia Class Members their regular wages as described herein Defendants committed an unlawful failure to pay wages and deduction from wages in violation of the VWPA, Va. Code § 40.1-29(A) and (C).

145. In violating the VWPA as described herein and not paying Plaintiff and the Virginia Class as required, Defendants "knowingly failed to pay wages to an employee in accordance with [the VWPA]" within the meaning of Va. Code § 40.1-29(J)&(K).

146. Plaintiff on behalf of herself and the Virginia Class seeks damages in the amount of unpaid and withheld wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, as well as "an amount equal to triple the amount of wages due and reasonable attorney fees and costs" pursuant to Va. Code §§ 40.1-29(J), all other relief available under the VWPA, and all other such legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on behalf of herself and the Class Members:

a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b. An order permitting this litigation to proceed as a Rule 23 class action pursuant to Fed. R. Civ. P. 23;

c. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential Collective Members;

d. Damages including unpaid back wages, unpaid overtime compensation, and prejudgment interest to the fullest extent permitted under the law;

e. Damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action." VA Code § 40.1-28.7:7;

f. Liquidated damages to the fullest extent permitted under the law;

g. Treble damages to the fullest extent permitted under the law;

h. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

i. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims and issues.

Dated: December 9, 2025

Respectfully submitted,

By: /s/ *Alexis I. Tahinci*

Alexis I. Tahinci (VSB #85996)
**TAHINCI LAW FIRM PLLC**
105 Ford Ave., Suite 3
Kingsport, TN 37663
Ph: (423) 406-1151
F: (423) 815-1728
Alexis@tahincilaw.com

Camille Fundora Rodriguez*
Michael J. Anderson*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-4635
Facsimile: (215) 875-4604
crodriguez@bergermontague.com
manderson@bergermontague.com

Alexandra K. Piazza*
**BERGER MONTAGUE PC**
1001 G Street, NW, Suite 400 East
Washington, DC 20001
Telephone: (215) 875-3063
apiazza@bergermontague.com

*Counsel for Plaintiff and the Proposed Collective Members*

* *Pro hac vice forthcoming*